# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CUMIS INSURANCE SOCIETY, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ELIZABETH ZUNIGA CHAVEZ GONZALEZ and DOES 1 to 10,<br><br>Defendants. | Case No. 1:12-cv-01916 AWI BAM<br><br>FINDINGS AND RECOMMENDATIONS GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT<br><br>(Doc. 9) |

On May 14, 2013, Plaintiff Cumis Insurance Society, Inc. ("Plaintiff" or "Cumis") filed a Motion for Default Judgment against Defendant Elizabeth Zuniga Chavez Gonzalez ("Defendant" or "Gonzalez"). (Doc. 9). Gonzalez has not responded to the motion or otherwise appeared in this lawsuit. The motion was referred to this Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. The Court deemed the matter suitable for decision without oral argument pursuant to Local Rule 230(g), and vacated the hearing scheduled for May 10, 2013. For the following reasons, Plaintiff's Motion for Default Judgment should be **GRANTED.**

## BACKGROUND

According to the complaint, Gonzalez was the manager of the Merced branch of the Educational Employees Credit Union ("EECU" or the "Credit Union") from approximately May 16, 2005 through her termination on September 23, 2010. Plaintiff's Complaint at ¶¶ 5, 8, Doc. 1. Between no later than June 2006 and September 23, 2010, Gonzalez engaged in a scheme to steal money from the Credit Union along with her co-defendants Does 1 to 10. *Id.* at ¶¶ 31, 34.

1

Specifically, Gonzalez fraudulently handled approximately 56 unsecured loans from the Credit Union to her friends and family members. *Id*. at ¶¶ 9, 31. In some cases, Gonzalez forged the Credit Union's signature and made loans to members without their knowledge; then transferred the money to herself. On other occasions, she manipulated friends and family into applying for loans. To perpetrate her scheme, Gonzalez would inform friends and family that they were pre-approved for a loan, and then ask them if she could borrow that identical amount of money; in return, she promised she would repay both the personal loan and the member's existing, legitimate loan with the credit union. *Id*. at ¶¶ 11-15.

The Credit Union terminated Gonzalez on September 23, 2010, following its discovery that Gonzalez had falsified documents and approved loans to family members. *Id*. at ¶¶ 18. After an investigation, Plaintiff found that the $182,800.92 loss to the Credit Union from these 56 loans was covered by an insurance policy provision covering "employee dishonesty." *Id*. at ¶¶ 19, 20-22. According to exhibits submitting in support of the motion, this coverage decision was made after a formal coverage analysis found that these 56 improper loans were "part of a general scheme to defraud the credit union." *See* Declaration of Kevin Rainbolt ("Rainbolt Decl."), Ex. 3 (Doc. 10-1 at 11, 18, 28); Ex. 6 (Doc. 10-2 at 71). Pursuant to this insurance policy, Plaintiff indemnified the Credit Union for its $182,800.92 loss, less a deductible of $10,000. Compl. at ¶¶ 20-22.

In exchange for this indemnification, the Credit Union assigned to Plaintiff its right to sue for this loss. *Id.* at ¶ 23. Plaintiff indemnified the Credit Union's entire loss totaling $182,800.92, which includes the $10,000 deductible. *See* Rainbolt Decl., Ex. 6 (Doc. 10-2 at 71).

Plaintiff filed a complaint on November 26, 2012, against Defendants Gonzalez and Does 1 to 10. (Doc. 1). Gonzalez was served on December 22, 2012 and her answer was due by January 14, 2013. (Doc. 5). On January 29, 2013, after Gonzalez failed to answer or otherwise defend against this action and upon Plaintiff's request, the Clerk entered default against Gonzalez. (Docs. 6, 7). On May 14, 2013, Plaintiff moved for default judgment against Gonzalez. (Doc. 9).

Plaintiff seeks default judgment in the amount of $182,800.92 on the five claims in its complaint: (1) equitable subrogation, (2) unjust enrichment, (3) fraud, (4) conversion, and (5) money had and received. Although the caption of the complaint lists two additional claims, Plaintiff neither

pleads these nor pursues them in this motion. Gonzalez did not oppose this motion. The Court has reviewed the motion, the exhibits and affidavits, and the applicable law, and is sufficiently advised on the issues involved.

## LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55(b)(2), a plaintiff can apply to the court for a default judgment against a defendant that has failed to plead or otherwise defend against the action. FED. R. CIV. P. 55(b)(2). "Upon default, the well-pleaded allegations of a complaint relating to liability are taken as true." *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983); *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987). Thus, "[a]t the time of entry of default, the facts alleged by the plaintiff in the complaint are deemed admitted." 10 J. Moore, MOORE'S FEDERAL PRACTICE § 55.11 (3d ed. 2000).

Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Although well-pleaded allegations in the complaint are admitted by a defendant's failure to respond, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)); *accord DIRECTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law" (citation and quotation marks omitted)).

## DISCUSSION

### A. Service of Process and Jurisdiction

Service of process against Gonzalez was adequate. Gonzalez is not an infant, incompetent person, in military service, or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940. She was properly served with the complaint and summons by substituted service at her

home in San Antonio, Texas on December 22, 2013. *See* Krone Declaration at ¶ 3 (Doc. 11), *Id.* at Ex. 6 (Doc. 11-1). Gonzalez's answer was due by January 14, 2013. *Id.* Gonzalez failed to answer and on January 29, 2013, the clerk entered default against her. (Doc. 6).

The allegations in the complaint are sufficient to establish subject matter jurisdiction in this Court pursuant to 28 U.S.C. § 1332(a)(1). Plaintiff and Gonzalez are citizens of different states: Plaintiff is a corporation, incorporated in and with its principal place of business in Wisconsin. Gonzalez resided in the State of California, County of Merced, and currently resides in Texas. The amount in controversy exceeds $75,000 exclusive of interest and costs.

**B.     The Eitel Factors**

Having considered the *Eitel* factors as discussed below, the Court finds that default judgment is appropriate as to Plaintiff's claims.

**1.     Substantive Merits and the Sufficiency of the Complaint**

The Court considers the merits of Plaintiff's substantive claims and the sufficiency of the complaint together because of the relatedness of the two inquiries. As seen below, the Court finds that Plaintiff's claims have been sufficiently plead and have substantive merit. These two factors thus weigh in favor of granting Plaintiff's motion. *See Danning*, 572 F.2d at 1388; *PepsiCo, Inc.,* 238 F. Supp. 2d at 1175.

**i.     Equitable Subrogation**

Plaintiff's first claim is for equitable subrogation. The essential elements of an insurer's cause of action for equitable subrogation are as follows: (1) the insurer has made payment to protect his own interest; (2) the insurer has not acted as a volunteer; (3) the insurer was not primarily liable for the debt paid; (4) the entire debt has been paid; and (5) subrogation will not work an injustice on the rights of others. *Caito v. United Cal. Bank*, 20 Cal. 3d 694, 704 (1978). Plaintiff has alleged that it tendered payment to EECU for $172,800.92, the full known amount of the loss Gonzalez caused, less Plaintiff's $10,000 deductible. Compl. ¶ 15. Cumis has supported its claim with declarations and attached documentation. (Rainbolt Decl., Ex. 6).

### ii. Conversion

The elements of a California conversion claim are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. *Burlesci v. Petersen,* 68 Cal.App.4th 1062, 1066 (1998).

Cumis alleges that the Credit Union was the lawful owner of the funds; that Gonzalez interfered with EECU's ownership rights by embezzling the funds, in some cases with assistance; and as a result, the Credit Union suffered $182,800.92 in damages, the amount that was taken through Gonzalez embezzlement scheme. (This loss includes the $10,000 deductible, as the Court explains below in connection with damages.) Cumis supported its claim with documentation. *See* Rainbolt Decl. & Exhibits.) Plaintiff has adequately pled this claim.

### iii. Fraud

Fraud entails (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or *scienter*); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. *See Lazar v. Superior Court*, 12 Cal.4th 631, 638 (Cal. 1996).

Plaintiff alleges that Gonzalez approved loans and received loan advances as part of a scheme to steal money from the Credit Union; that she concealed this fact from the Credit Union; that the Credit Union relied on Gonzalez, whom it had placed in a position of trust as manager of the Merced branch and charged with a fiduciary duty; and that this led to damages equal to the total loss amount. Compl. at ¶¶ 34-35. On these allegations, Plaintiff has properly alleged a claim for fraud.

### iv. Unjust Enrichment

In California, "[t]he elements of an unjust enrichment claim are the 'receipt of a benefit and [the] unjust retention of the benefit at the expense of another.' " *Peterson v. Cellco P'ship,* 164 Cal.App.4th 1583, 1593 (2008) (alteration in original) (quoting *Lectrodryer v. SeoulBank,* 77 Cal.App.4th 723, 726 (2000)).

Plaintiffs allege that Gonzalez's misappropriation of funds conferred a benefit of the embezzled amount and that her retention of this benefit would be unjust. Plaintiff has adequately pled a claim for unjust enrichment.

5

### v. Monies Had and Received

"The essential element of an action for money had and received is the allegation that the defendant had and received the money to and for the use and benefit of a plaintiff. From the complaint it must appear that the money held by defendant is the property of plaintiff and that defendant is obliged in equity and good conscience to restore it to him." *Macbeth v. West Coast Packing Corp.*, 83 Cal.App.2d 96, 98 (Cal. App. 1947).

Again, Plaintiff has sufficiently pled a claim for monies had and received.

### 2. Possibility of Prejudice to Plaintiff

*Eitel* requires that the Court consider whether the plaintiff would suffer prejudice if default judgment is not entered, and such potential prejudice to the plaintiff militates in favor of granting a default judgment. *See PepsiCo, Inc*., 238 F. Supp. 2d at 1177. Here, Plaintiff would face prejudice if the Court did not enter a default judgment. Absent entry of a default judgment, Plaintiff would be without recourse for recovery given defendant's failure to participate in this litigation in any fashion. Accordingly, the first *Eitel* factor favors the entry of default judgment.

### 3. The Sum of Money at Stake in the Action

Under the fourth factor cited in *Eitel*, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc*., 238 F. Supp. 2d at 1177; *see also Philip Morris USA, Inc. v. Castworld Prods., Inc*., 219 F.R.D. 494, 500 (C.D. Cal. 2003).

Here, Plaintiff seeks damages of $182,800.92. This represents the amount that Gonzalez personally converted and defrauded the bank of, either by herself, or with the assistance of others. Consequently, the factor does not weigh against the entry of default judgment.

### 4. The Possibility of a Dispute Concerning Material Facts

The facts of this case are relatively straightforward, and Plaintiff has provided the court with well-plead allegations and declarations with exhibits in support. Here, the Court may assume the truth of well-plead facts in the complaint following the clerk's entry of default and, thus, there is no likelihood that any genuine issue of material fact exists. Defendant's failure to file an answer in this case or a response to the instant motion further supports the conclusion that the possibility of a dispute as to material facts is minimal. *See*, *e.g.*, *Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D.

388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists.").

### 5. Whether the Default Was Due to Excusable Neglect

Upon review of the record before the Court, the Court finds that the default was not the result of excusable neglect. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Plaintiff served Gonzalez with the summons and complaint by substituted service on her father and mailed a copy to the same address. Moreover, Plaintiff served Gonzalez with notice of its motion for default judgment. Despite ample notice of this lawsuit and Plaintiff's intention to seek a default judgment, Gonzalez has not appeared in this action to date. Thus, the record suggests that she has chosen not to defend this action, and not that the default resulted from any excusable neglect. Accordingly, this *Eitel* factor favors the entry of a default judgment.

### 6. The Strong Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, district courts have concluded with regularity that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself in an action. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; *see also Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. Mar. 5, 2010). Accordingly, although the Court is cognizant of the policy favoring decisions on the merits—that policy is unavailable here because Gonzalez has not responded. This factor does not weigh against entry of default judgment.

Upon consideration of the *Eitel* factors, the Court concludes that Plaintiff is entitled to the entry of default judgment against Gonzalez. The Court therefore recommends that Plaintiff's Motion for Default Judgment should be GRANTED.

### C. **Damages**

A party's default conclusively establishes that party's liability, however it does not establish the amount of damages. *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (*per curiam*). Therefore, the Court must consider the question of damages separately. For it damages

1  calculation, Cumis asserts damages and costs of a total of $182,800.92 including its $10,000.00
2  deductible.

### 1.     The $10,000 Deductible

"A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." FED. R. CIV. P. 54 (c). In the complaint, Plaintiff prays for general damages of not less than $182,800.92, the Credit Union's total loss. Compl. at p. 7.

In the present case, Plaintiff is eligible to recover its deductible. In a recent case involving very similar facts, the court declined to award the deductible, explaining that Plaintiff had "provided no evidence that it is entitled to recover the deductible under any other legal theory." *Cumis Ins. Soc., Inc. v. Ferraro*, EDCV 11-1767VAP DTBX, 2012 WL 3778336 (C.D. Cal. Aug. 29, 2012). The Court relied on *Pac. Gas & Elec. Co. v. Superior Court,* 144 Cal.App.4th 19, 24 (2006). This case, however, suggests that the insurer may pursue the deductible when the claim has been assigned. *Id*. at n.3. Discussing this same case, the Rutter California Practice Guide has explained: "To recover any *deductible paid by the insured* … the insured either must be joined as a party … or must *assign* the claim to the insurer." Hon. H. Walter Croskey & Hon. Rex Heeseman, California Practice Guide: Insurance Litigation Ch. 15-B (2012), *citing Pac. Gas & Elec. Co.*at n.3 (emphasis in original). Here, Plaintiff can recover the deductible because it has been assigned the entire claim, including the deductible. *See* Rainbolt Decl., Ex. 6 (Doc. 10-2 at 71) (full release and assignment).

### 2.     The Proper Total Amount of Damages

Plaintiff alleges that Gonzalez caused $182,800.92 in damages to Plaintiff through fraud and conversion. This allegation is adequately supported by declarations and attached documentation. Accordingly, the Court GRANTS Plaintiff's request for damages in the amount of $182,800.92 as to the claims of fraud, conversion, and equitable subrogation.

The complaint does not allege that Gonzalez received all this money. Instead, it states that the loans were "for the benefit of GONZALEZ and DOES 1 through 10." Compl. at ¶ 17. Based on its own investigation, Plaintiff identified specific loans which "may have/did" lead to a financial benefit by Gonzalez. *See* Rainbolt Decl., Ex. 1 (Doc. 10-1 at 1-3) ("Summary of Charged-Off Loans"). The amount of these loans totals $96,989.89, representing the total charge-off to the Credit

Union (net of interest) of the loans from which Gonzalez benefitted, not including a late-discovered loan which does not appear in this summary. Based on Plaintiff's investigation, the Court GRANTS damages in the amount of $96,989.89 on Plaintiff's claims of unjust enrichment and money had and received.

**D.     Remaining Defendants**

Under Rule 4(m) to the Federal Rules of Civil Procedure, a plaintiff must serve summons and complaint on all named defendants within 120 days of filing. Failure to do so can result in dismissal of the action against the unserved defendant for failure to prosecute. *See* FED. R. CIV. P. 4(m). Plaintiff filed its Complaint on November 26, 2012, and the 120–day window has passed. All remaining unserved defendants should be dismissed for failure to prosecute.

## CONCLUSION

Based on consideration of the declarations, pleadings and exhibits to the present application, the Court RECOMMENDS as follows:

1.     Plaintiff's Motion for Default Judgment be GRANTED with damages of $182,800.92 as to the claims of fraud, conversion, and equitable subrogation and $96,989.89 as to the claims of unjust enrichment and money had and received. As these claims are overlapping, the total amount of damages is $182,800.92.

2.     Judgment be entered in this action against Defendant Elizabeth Zuniga Chavez Gonzalez and in favor of Cumis Insurance Society, Inc. in the amount of $182,800.92; and

3.     DOES 1 – 10 be DISMISSED without prejudice for failure to prosecute.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to Title 28 of the United States Code section 636(b)(1)(B) and this Court's Local Rule 304. Within fifteen (15) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to Title 28 of the United States Code section 636(b)(1)(C).

9

The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **June 14, 2013**      /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE